James D. Gilson (5472)
Lyndon R. Bradshaw (15097)
**DENTON DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
PO Box 4050
Salt Lake City, UT 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
james.gilson@dentons.com
lyndon.bradshaw@dentons.com

*Attorneys for Defendant*

---

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **JENNIFER MOORE,** individually and on behalf of all others similarly situated**,**<br><br>*Plaintiff,*<br><br>v.<br><br>**JOHN C. HEATH, ATTORNEY AT LAW, PLLC d/b/a LEXINGTON LAW FIRM,**<br><br>*Defendant*. | **Case No. 2:21-CV-00027-TC**<br><br>**LEXINGTON LAW FIRM'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND TO STRIKE CLASS ALLEGATIONS**<br><br>Judge Tena Campbell |

Defendant John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law Firm ("Lexington Law"), by counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23(d)(1)(D), files this Motion to Dismiss and to Strike Plaintiff's Class Allegations. For the reasons set forth herein, the Court should dismiss Counts III and IV of Plaintiff's Complaint and strike Plaintiff's class allegations related to Counts I and II.

<u>**INTRODUCTION**</u>

This case suffers two major defects: it asserts individual claims that are not enforceable through private rights of action, and it asserts class claims over which this Court has no subject matter jurisdiction.  The individual claims must be dismissed, and the overbroad class should be narrowed.

Counts III and IV of Plaintiff's Complaint fail to state claims upon which relief may be granted and should be dismissed on their merits.  Those two counts assert claims under subsections of the TCPA's implementing regulations, which <u>*are not*</u> enforceable through a private right of action.  Additionally, Plaintiff asserts Lexington Law failed to honor her request not to be called, but the calls she alleges she received all occurred within the safe harbor "grace period" provided in the regulation.  For these reasons, the Court must dismiss these counts.

Furthermore, ever since the Supreme Court decided *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 138 (1803), it has been a fundamental principle that an unconstitutional law is unenforceable. Yet Plaintiff seeks to represent a class asserting violations of a law that the Supreme Court determined was unconstitutional during most of the proposed class period.  The Court lacks jurisdiction to adjudicate the claims arising during that period.  Therefore, the Court should strike the class allegations regarding those claims and narrow the proposed class period consistent with the long-standing, fundamental constitutional principle that "[a]n unconstitutional law is void, and is as no law."  *Ex parte Siebold*, 100 U.S. 371, 376 (1879).

Plaintiff claims Lexington Law violated the "automated-call restriction" provision of the Telephone Consumer Protection Act ("TCPA"), and the regulations promulgated pursuant to that provision, by placing calls to Plaintiff's cell phone without her express prior consent.  She seeks

2

to certify a class of persons who allegedly received such phone calls in the four years preceding the filing of this action—in other words, since January 2017.  The TCPA's automated-call restriction on which that claim is based, however, was declared by the Supreme Court to have been an unconstitutional, content-based restriction on speech.  That was true from the date of the enactment of an amendment in November 2015 until July 6, 2020, when the Supreme Court severed from the statute the amendment that rendered the provision unconstitutional.  *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter "*AAPC*").[1]  That period covers most of that putative four-year class, leaving only a handful of months to spare.  The vast majority of these putative class members have no claim to assert other than a violation of an unconstitutional statute.  The Court has no jurisdiction over such a claim.

### SUMMARY OF MATERIAL FACTS

The named Plaintiff, Jennifer Moore, alleges she received "at least 10" phone calls using a prerecorded voice from Lexington Law to her cell phone between December 29, 2020 and January 8, 2021.  (Compl. ¶ 21.)  Plaintiff claims she never consented to receive these calls.  (Compl. ¶ 27–28.)  She also claims she "made requests to Defendant's employees to stop calling her" cell phone, though she does not allege when or in what form such requests were made.  (Compl. ¶ 22.)  Plaintiff finally alleges the prerecorded messages sent to her cell phone did not provide a mechanism to opt out of receiving phone calls.[2]  (Compl. ¶ 25.)

---

[1]     Because the Supreme Court decided the constitutional challenge to the automated-call restriction in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply and no "notice of constitutional question" is required.  *See* Fed. R. Civ. P. 5.1(a).

[2]     Lexington Law denies all these allegations, which are false and disproven by Lexington Law's business records and the practices it maintains to ensure TCPA compliance.  The lack of merit of Plaintiff's claims, however, can be set aside for purposes of this motion challenging the

3

Plaintiff filed suit on January 15, 2021, asserting the phone calls from Lexington Law violated the TCPA and its implementing regulations. Specifically, in Counts I and II, Plaintiff asserts Lexington Law violated the TCPA's automated call restriction provision (47 U.S.C. § 227(b)) and the TCPA's implementing regulations (47 C.F.R. § 64.1200(a)), which both prohibit placing calls using a prerecorded voice without the prior express consent of the called party (collectively, the "No Consent" claims). (Compl. ¶ 48–67.) Plaintiff asserts these claims on behalf of herself and a proposed nationwide class consisting of all persons who received a telemarketing call from Lexington Law using a prerecorded or artificial voice "within the four years prior to the filing of this Complaint." (Compl. ¶ 37.) Given that the action was filed on January 15, 2021, the proposed class reaches back to January 2017.

In Count III, Plaintiff asserts Lexington Law's alleged "refusal to honor" her opt-out requests indicates a failure to implement a written policy for maintaining an internal do-not-call list and for training its personnel to use this list, in violation of 47 C.F.R. § 64.1200(d) (the "Internal Do Not Call" claim). (Compl. ¶ 73–74.) Plaintiff asserts this claim on behalf of herself and a proposed nationwide class reaching back four years. (Compl. ¶ 37.)

Finally, in Count IV, Plaintiff asserts Lexington Law violated 47 C.F.R. § 64.1200(b)(3) by delivering prerecorded voice messages to Plaintiff that did not provide an automated opt-out mechanism for the called party to make a do-not-call request (the "No Opt-Out" claim). (Compl. ¶ 80.) Once again, Plaintiff asserts this claim on behalf of herself and a proposed nationwide class reaching back four years. (Compl. ¶ 37.)

---

sufficiency of Plaintiff's claims as pleaded and the subject matter jurisdiction of the Court over the alleged claims asserted on behalf of the proposed class.

SLC_5409344.1
115541739

<u>LEGAL STANDARD</u>

**A.      Legal Standard for Motion to Dismiss for Failure to State a Claim**

To withstand a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B.      Legal Standard for Motion to Strike Class Allegations**

Federal Rule of Civil Procedure 23(d)(1)(D) authorizes district courts to "require that the pleadings [in a class action] be amended to eliminate allegations about representation of absent persons." *Id.*  This provision, in tandem with Rule 12(f), empowers a district court to dismiss or strike class allegations at the pleading stage.  *See Gilbert v. United States Olympic Committee*, 423 F. Supp. 3d 1112, 1155 (D. Colo. 2019) (striking overbroad class definition pursuant to Rule 12(f)); *Knopke v. Ford Motor Co.*, No. 14-cv-2225, 2014 U.S. Dist. LEXIS 158928, at *25–27 (D. Kan. Nov. 10, 2014) (unpublished) (analyzing motion to strike pursuant to Rules 12(f) and 23(d)(1)(D) and noting "the Court has authority to strike the class allegations at this time").  *See also Security Systems, Inc. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1198 (D. Utah 2019) (granting motion to strike class allegations for failure to satisfy Rule 23(b)(3)).

5

The Tenth Circuit has held that a district court does not abuse its discretion by striking class allegations when it is apparent from the pleadings that a class should not be certified. *Baum v. Great Western Cities, Inc., of New Mexico*, 703 F.2d 1197, 1210 (10th Cir. 1983). Courts in this circuit have, therefore, granted motions to strike where the class definition is overbroad because it includes class members who cannot assert claims as a matter of law. *See, e.g.*, *Gilbert*, 423 F. Supp. 3d at 1155 (striking class that "include[d] putative class members who were not damaged"); *Edwards v. Zenimax Media, Inc.*, No. 12-cv-00411, 2012 U.S. Dist. LEXIS 137520, at *5, 16–18 (D. Colo. Sept. 25, 2012) (unpublished) (striking class definition as overbroad because it included individuals who suffered no injury). Ultimately, granting a motion to strike lies within the sound discretion of the district court. *Baum*, 703 F.3d at 1210.

C.   **The Court's Subject Matter Jurisdiction**

Federal courts are of limited jurisdiction; therefore, a court lacking subject matter jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss" the claim.).

A federal court only has subject matter jurisdiction over "cases" or "controversies." U.S. Const. Art. III, 2; *SEC v. Med. Comm. For Human Rights*, 404 U.S. 403, 407 (1972) (it is well-settled that federal courts may act only in the context of a justiciable case or controversy); *United States v. Hahn*, 359 F.3d 1315, 1322–23 (10th Cir. 2004). And, a claim based on an unconstitutional law does not present a case or controversy. *See United States v. Baucum*, 80 F.3d

6

539, 541-42 (D.C. Cir. 1996) (*per curiam*) ("[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]"); *Doe v. Smith,* No. 98-cv-6600, 2001 U.S. Dist. LEXIS 24974, at *19 (E.D.N.Y. Jan. 12, 2001) (unpublished) ("A claim based on a law that the Supreme Court subsequently finds unconstitutional ceases to present a "case or controversy" under Article III"). Therefore, the Court lacks subject matter jurisdiction over claims seeking to enforce an unconstitutional statute.

<u>**ARGUMENT**</u>

I. <u>**The "No Opt-Out" and "Internal Do Not Call" Claims in Counts IV and III Fail to State Claims Upon Which Relief May Be Granted**</u>

Plaintiff asserts two claims under the TCPA's implementing regulations that fail as a matter of law. Plaintiff's "No Opt-Out" claim, Count IV, alleges Lexington Law delivered prerecorded voice messages without an automated opt-out mechanism. Her "Internal Do Not Call" claim, Count III, alleges Lexington Law failed to honor her requests not to be called and failed to implement a written policy for maintaining a do-not-call list. Both arise under the TCPA's implementing regulations. *<u>Neither is enforceable through a private right of action</u>*. Furthermore, regarding the "Internal Do Not Call" claim, the facts as pleaded demonstrate Lexington Law's conduct fell within the safe harbor provided by the regulation. Accordingly, these claims must be dismissed.

A. **The "No Opt-Out" Claim (Count IV) Is Not Enforceable Through a Private Right of Action.**

"The TCPA . . . does not create a private right of action for every violation of its provisions, but instead creates such a right only in specific circumstances." *Kopff v. Battaglia*, 425 F. Supp.

2d 76, 90 (D.D.C. 2006).  And, Plaintiff's "No Opt-Out" claim arises under regulations for which the TCPA does not provide a private right of action.

Subsection 227(b) of the TCPA contains a provision entitled "Private right of action," which authorizes "an action based on a violation of *this subsection* or the regulations proscribed *under this subsection*."  *See* 47 U.S.C. § 227(b)(3) (emphasis added).  Subsection 227(c) contains a similar "Private right of action" provision limited to that subsection.  *Id.* § 227(c)(5).  Notably, however, subsection 227(d), which sets forth the "Technical and procedural standards" for calls regulated by the TCPA, does not contain a "Private right of action" provision.  Accordingly, "virtually every federal court to have considered this issue" has concluded the TCPA does not authorize a private right of action for violations of the technical procedures prescribed by subsection 227(d) and the regulations promulgated pursuant to it.  *See Hurley v. Wayne County Board of Education*, No. 3:16-cv-9949, 2017 U.S. Dist. LEXIS 86345, at *9 (S.D. W. Va., June 6, 2017) (unpublished) (collecting cases).[3]

The "No Opt-Out" claim arises under 47 C.F.R. § 64.1200(b)(3), which was promulgated pursuant to 47 U.S.C. § 227(d).  Section 227(d) outlines the TCPA's "[t]echnical and procedural standards."  Section 227(d)(3) authorizes the Federal Communications Commission ("FCC") to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone," and outlines generally what those standards must

---

[3]    *See also, e.g.*, *Ashland Hosp. Corp. v. SEIU*, 708 F.3d 737, 745 (6th Cir. 2013); *Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (C.D. Cal. 2007) ("In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed by section 227(d)."); *Kopff*, 425 F. Supp. 2d at 90–91 (holding "Congress plainly opted *not* to permit a private civil action for violations" of the FCC's regulations setting forth technical and procedural standards pursuant to subsection 227(d)).

8

require.  *Id.*  In turn, § 64.1200(b) prescribes the requirements outlined in § 227(d) with additional

details.  47 C.F.R. § 1200(b).  Because § 64.1200(b) (including subsection (b)(3), under which

Plaintiff's "No Opt-Out" claim arises) implements § 227(d)'s technical and procedural standards,

it is not enforceable through a private right of action.  *Charvat v. NMP, LLC*, 656 F.3d 440, 449

(6th Cir. 2011) ("Technical and procedural standards specific to automated calls are included in §

227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right

of action or a statutory-damages provision.").  Thus, Plaintiff's individual and class claims asserted

under § 64.1200(b)(3) must be dismissed.  *See Less v. Quest Diagnostics, Inc.*, No. 3:20-cv-2546,

2021 U.S. Dist. LEXIS 14320, at *2–3 (N.D. Ohio. Jan. 26, 2021) (slip opinion) (dismissing claims

because "there is no private right of action under" § 64.1200(b)(3)).

**B.      The "Internal Do Not Call" Claim (Count III) Is Not Enforceable Through a Private Right of Action.**

The "Internal Do Not Call" claim arises under 47 C.F.R. § 64.1200(d).  This regulation

requires callers making telemarketing calls to "institute[] procedures for maintaining a list of

persons who request not to receive telemarketing calls made by or on behalf of [the caller]."  *Id.*

These procedures must include "a written policy, available on demand, for maintaining a do-not-

call list," and "personnel engaged in any aspect of telemarketing must be informed and trained in

the existence and use of the do-not-call list."  *Id.*  § 1200(d)(1)–(2).

Like § 64.1200(b), § 64.1200(d) prescribes technical and procedural standards pursuant to

the authority granted by § 227(d) of the TCPA.  Specifically, § 64.1200(d) requires callers to

"institute[] *procedures* for maintaining" an internal do-not-call list and sets forth "minimum

*standards*" for those procedures.[4]   Therefore, this subsection is also not enforceable through a private right of action.  Several courts have come to this very same conclusion.  *See, e.g.*, *Braver v. NorthStar Alarm Servs., LLC*, No. 17-cv-0383, 2019 U.S. Dist. LEXIS 118080, at *33–35 (W.D. Okla. July 16, 2019) (unpublished) (concluding "§64.1200(d) was promulgated under §227(d)" and "[t]here is no private right of action for alleged violations of §64.1200(d)"); *Worsham v. Travel Options*, No. 14-cv-2749, 2016 U.S. Dist. LEXIS 118774, at *10 (D. Md. Sept. 1, 2016) (unpublished) ("[T]he requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA."), *aff'd*, 678 Fed. App'x 165 (4th Cir. 2017); *Burdge v. Ass'n Health Care Mgmt.*, No. 1:10-cv-00100, 2011 U.S. Dist. LEXIS 9879, at *10 (S.D. Ohio Feb. 2, 2011) (unpublished) (dismissing claims under § 64.1200(d) because § 227(d) "does not contain a private right of action").

Accordingly, because there is no private right of action to enforce 47 C.F.R. § 64.1200(d), this Court should dismiss Plaintiff's individual and class claims arising under this regulation.

### C.     The Alleged Calls to Plaintiff All Occurred Within the Safe Harbor "Grace Period" Provided in 47 C.F.R. § 64.1200(d), Thus Further Requiring Dismissal of Count III.

Finally, Plaintiff's "Internal Do Not Call" claim in Count III further fails because the calls she alleges she received from Lexington Law fell well within the safe harbor provided in § 64.1200(d).

---

[4]     This is further made clear by comparing § 227(d)(3) (which authorizes the Commission to promulgate standards requiring prerecorded calls to identify the name and phone number of the caller) with § 64.1200(d)(4) (which requires prerecorded calls to include such an identification).

In addition to requiring a person or entity making prerecorded telemarketing calls to maintain an internal do-not-call list, § 64.1200(d) requires the caller to honor a request not to be called "within a reasonable time from the date such request is made . . . not [to] exceed 30 days from the date of such request." *Id.* § 64.1200(d)(3). Courts have dismissed claims under this provision when the plaintiff's allegations clearly fall within this safe harbor time frame. *See, e.g.*, *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014) (recognizing the regulations allow for a "grace period" and do not "require an immediate stop"); *Orsatti v. Quicken Loans, Inc.*, No. 2:15-cv-09380, 2016 U.S. Dist. LEXIS 182873, at *18–20 (C.D. Cal. Sept. 12, 2016) (unpublished) (holding the defendant's calls occurred "within the 30 day safe harbor the statute enunciates" where plaintiff "limited [her] allegations to calls made in or around June 2015"). Here, Plaintiff alleges she received phone calls from Lexington Law "[b]etween December 29, 2020 and January 8, 2021." (Compl. ¶ 21.) Thus, even if she requested not to be called in the very first call (which she *does not allege*), no call occurred more than 10 days afterward, let alone outside of the 30-day safe harbor provided for in the regulation. "To the extent that the Plaintiff received other calls from the Defendant outside of the 30 day window, she has not alleged such calls in her Complaint." *Orsatti*, 2016 U.S. Dist. LEXIS, at *19. Accordingly, this Court should dismiss the "Internal Do Not Call" claim on this basis as well.

## II.     The "No Consent" Claims (Counts I and II) Seek to Invoke a TCPA Provision That Was Unconstitutional for Most of the Proposed Class Period

The class definition for Plaintiff's proposed "No Consent" class is overbroad because this Court lacks subject matter jurisdiction over claims arising during most of the class period, as explained in detail below. For this reason, the Court should strike Plaintiff's class allegations and

11

narrow the class period to begin no earlier than July 6, 2020, to include only those claims in Counts I and II over which this Court can exercise jurisdiction.

> **A.**   **In *AAPC*, the Supreme Court Held that the Automated-Call Restriction Combined with the Government-Debt Exception was Unconstitutional.**

The TCPA's automated-call restriction prohibits calls or texts made to a cell phone using an "automatic telephone dialing system or an artificial or prerecorded voice" unless the caller has the "prior express consent" of the called party.   47 U.S.C. § 227(b)(1)(A)(iii).   The TCPA's implementing regulations enact the same prohibition.   47 C.F.R. § 64.1200(a); *AAPC*, 140 S. Ct. at 2344 n.1 (recognizing the statute, "as implemented by the Federal Communications Commission, bars both automated voice calls and automated text messages").   <u>These are the statutory and regulatory provisions that form the basis for Plaintiff's "No Consent" claims.</u>

As originally enacted in 1991, this automated-call restriction "prohibited almost all robocalls to cell phones."   *AAPC*, 140 S. Ct. at 2344.   In November 2015, however, Congress amended the provision, adding an exception to the restriction that permitted calls "made solely to collect a debt owed to or guaranteed by the United States."   Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (2015).   Under this "government-debt exception," government debt collectors were permitted to make automated calls otherwise prohibited by the provision. *Lindenbaum v. Realgy, LLC*, 2020 U.S. Dist. LEXIS 201572, at *4 (N.D. Ohio Oct. 29, 2020) (slip opinion).[5]

---

[5]     In 2016, the FCC promulgated rules interpreting the 2015 amendment, including rules to limit the number and duration of calls covered by the government-debt exception.  These rules never went into effect, however, because the FCC withdrew the proposed regulation before the Office of Management and Budget approved it.  Letter from Sen. Edward J. Markey et al. to Ajit

That amendment was challenged in court as unconstitutional.  The plaintiffs in *AAPC* were organizations engaged in making "calls to citizens to discuss candidates and issues, solicit donations, conduct polls, and get out the vote."  *AAPC*, 140 S. Ct. at 2345.  They wanted to make automated calls to cellular telephones for these purposes.  *Id.*  They filed a declaratory judgment action against the United States Attorney General and the FCC, claiming that the automated-call provision violated the First Amendment because it was a content-based restriction that favored one form of speech over another.  *Id.*; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, *4.

The district court held that the automated-call restriction as amended was a content-based regulation of speech, and therefore must survive strict scrutiny to be constitutional.  Even so, the court concluded the law was constitutional even under a strict scrutiny analysis.  *AAPC*, 140 S. Ct. at 2345.  The plaintiffs appealed and the Fourth Circuit reversed, holding that the law could not withstand strict scrutiny.  *Id.*  The Fourth Circuit then determined that the government-debt exception was severable from the automated-call restriction.  *Id.*  The government then petitioned for a writ of *certiorari*, which the Supreme Court granted.  *Id.*

The Supreme Court held that the automated-call restriction as amended was indeed content-based and, therefore, subject to strict scrutiny.  *AAPC*, 140 S. Ct. at 2346-47 ("The initial First Amendment question is whether the robocall restriction with the government-debt exception, is content-based.  The answer is yes.").  The Supreme Court then concluded that the provision could not survive strict scrutiny, rendering it unconstitutional.  *Id.*, at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over

---

Pai (FCC Chairman) (June 15, 2018), *available at* https://www.markey.senate.gov/imo/media/doc/Letter%20--%20Federal%20Debt%20Collectors%206-15-18.pdf.

political and other speech, in violation of the First Amendment."); *see also Creasy v. Charter Commn's Inc.*, 489 F. Supp. 3d 499, 505 (E.D. La. 2020) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977) (recognizing that the position taken by those members of the Court who concurred in the judgment on the narrowest grounds is the holding of the Court).

Faced with the unconstitutionality of the provision, the Supreme Court then had to decide whether to sever the government-debt exception (thus returning the provision to its pre-amendment form) or invalidate the entire provision. The Court opted to rescue the automated-call restriction prospectively by severing the government-debt exception. *AAPC*, 140 S. Ct. at 2352-55.

Critically, in reaching its decision in *AAPC*, the Supreme Court held that the automated-call restriction, *in its entirety*, was unconstitutional from the date of the 2015 amendment creating the government-debt exception until the Court's July 6, 2020 decision. Specifically, the Supreme Court held that the automated-call restriction combined with the government-debt exception failed strict scrutiny, meaning the entire provision violated the First Amendment from the date the government-debt exception was enacted in 2015. *AAPC*, 140 S. Ct. at 2343; *see also Creasy*, 489 F. Supp. 3d at 506 ("As a majority of the Court held in AAPC, the 2015 amendment adding the government debt-exception to § 227(b)(1)(A)(iii) converted a theretofore neutral speech restriction into an invalid content-discriminatory one."). That ruling applies to all cases asserting violations prior to the curative severance, including this one. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767-68 (Fed. Cir. 2020) (O'Malley, J., concurring) ("Our decision that the statute can be rendered constitutional by severance does not remedy any past harm—it only avoids continuing harm in the future. It is only meaningful prospectively, once severance has occurred.").

14

Since *AAPC*, several district courts have recognized that the severance operates only prospectively.  Specifically, district courts in Louisiana, Ohio, and Florida have concluded that § 227(b)(1)(A)(iii), with the government-debt exception, was unconstitutional from the 2015 enactment of the exception until the Supreme Court severed the exception in *AAPC*.  In turn, those courts held that a defendant could not be liable for allegedly violating the automated-call restriction for calls placed during that period.  First, in *Creasy*, the District Court for the Eastern District of Louisiana held that "the unconstitutional *amended* version of § 227(b)(1)(A)(iii) is what applied . . . at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction . . . with regard to such communications." *Creasy*, 489 F. Supp. 3d at 508. Next, in *Lindenbaum*, the District Court for the Northern District of Ohio reached the same conclusion, holding that "at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. . . .  Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter." *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18-20.  Similarly, in *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 U.S. Dist. LEXIS 236577, at *8 (M.D. Fla. Dec. 11, 2020) (slip opinion), a District Court in the Middle District of Florida found that "[t]he 2015 amendment, adding the government-debt exception, changed an otherwise valid statute to an unconstitutional content-based restriction."  All three courts held "as a matter of law and logic" that severance of the government-debt exception *did not* apply retroactively to save the plaintiffs' claims in those

cases.  *Creasy*, 489 F. Supp. 3d at 503; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *14-15; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8.[6]

These cases lead to one inescapable conclusion:  The automated-call restriction was unconstitutional during the majority of Plaintiff's proposed class period and, therefore, the Court lacks subject matter jurisdiction over any putative class member's claims arising during that period.

**B.  Based on the Unconstitutionality of The TCPA Provision at Issue, the Proposed Class Must be Narrowed.**

As set forth above, courts have repeatedly recognized that "[a]n unconstitutional law is void, and is as no law." *Creasy,* 489 F. Supp. 3d at 505 (quoting *Ex parte Seibold*, 100 U.S. at 376); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 730–31 (2016) ("[W]hen a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful."); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759–60 (1995) ("A court does not—in the nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statue is not in itself a cognizable 'wrong.'").

Accordingly, "a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion."  *Creasy*, 489 F. Supp. 3d at 505 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (holding that, even after an invalid time-place-manner

---

[6]    Lexington Law recognizes that district courts have split on the impact of *AAPC* on the TCPA.  *See, e.g. Less v. Quest Diagnostics, Inc.*, No. 3:20-cv-2546, 2021 U.S. Dist. LEXIS 14320, at *2-3 (N.D. Ohio. Jan. 26, 2021).  Lexington Law believes the decisions finding the TCPA unconstitutional during the time of the government-debt exception are the better reasoned decisions, for the reasons explained in this memorandum.

restriction has been revised, the court must examine "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue) (emphasis added).

"[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce))." *Id.* at *7-8 (quoting *Baucum*, 80 F.3d at 541-42).

### 1. <u>**Proposed class members alleging violations before July 6, 2020 have no viable claim.**</u>

Even though § 227(b)(1)(A)(iii) was unconstitutional from November 2015 until July 2020, Plaintiff seeks to represent a putative class of persons asserting violations of the TCPA's automated call restriction over a time period reaching back to January 2017.  (Compl. ¶ 41.)  That period covers three-and-a-half years during which the TCPA's automated-call restriction was unconstitutional, *i.e.*, from January 2017 until July 2020, when the Supreme Court restored the "constitutional muster of 227(b)(1)(A)(iii) by severing the government-debt exception in *AAPC*." *Creasy*, 489 F. Supp. 3d at 506.

As a majority of the Court held in *AAPC*, "the 2015 amendment adding the government-debt exception converted a theretofore neutral speech restriction" into an unconstitutional content-discriminatory one.   *Id.*   Because Lexington Law cannot be held liable for violating an unconstitutional statute, this Court cannot provide a remedy under § 227(b) to any putative class member who received calls prior to July 6, 2020. Such claims do not present a cognizable justiciable federal question. *Id.*, at *14 (holding that because the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to defendant at the time of the communications at issue, the court lacked subject matter jurisdiction to adjudicate the defendant's liability).

Plaintiff's assertion of an identical claim under 47 C.F.R. § 64.1200(a), the automated-call restriction's implementing regulation, does not avoid this result.  The regulation was promulgated by the FCC pursuant to the specific authority granted to the FCC by Congress in the TCPA.  *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.").  Although the FCC did not specifically amend the regulations to include the government-debt exception, liability under the regulation can be no broader than what the FCC was authorized to regulate.  *See Board of Governors of Federal Reserve System v. Dimension Fin. Corp.*, 474 U.S. 361, 374–75 (1986) (holding a federal agency's "rulemaking power is limited to adopting regulations to carry into effect the will of Congress as expressed in the statute"); *Dixon v. United States*, 381 U.S. 68, 74–75 (1965) ("A regulation which . . . operates to create a rule out of harmony with the statute, is a mere nullity.").  From November 2015 until July 2020, a government-debt robocaller exempted from liability under the statute could not be liable under the regulation; thus, enforcement of the regulation in accordance with the statute resulted in the same unconstitutional, content-based regulation of speech denounced by the Supreme Court in *AAPC*.

Furthermore, an agency cannot remedy the constitutional defects of a statute through its implementing regulations.  *Parker v. Horton's Funeral Service, Inc.*, 200 F.R.D. 1, 2 (D.D.C. 2001) ("[A] regulation enacted by an agency cannot rewrite an unconstitutional statute, especially when the regulation's ostensible modification of the statute is in direct conflict with the statute's plain language.").  Thus, constitutionally speaking, the statute and the regulation must stand or fall together.  Lexington Law cannot be held liable under either the unconstitutional automated-call restriction <u>*or*</u> the regulation implementing it.

18

In sum, a federal court has no jurisdiction over a claim based on an unconstitutional law and it cannot impose liability in a discriminatory manner that violates the First Amendment. *Id.*; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *20 ("Because the statute at issue [§ 227(b)(1)(A)(iii)] was unconstitutional at the time of the alleged violations, the court lacks jurisdiction over this matter."); *Grayned*, 408 U.S. at 107 (a court may not impose liability for speech that allegedly violates an unconstitutional statute); *United States v. Walker*, 59 F.3d 1196, 1198 (11th Cir. 1995) ("We can think of no plainer error than to allow a conviction to stand under a statute which Congress was without power to enact."). Because this Court has no subject matter jurisdiction over the "No Consent" claims asserted prior to July 6, 2020, the Court should strike Plaintiff's class allegations to the extent they alleged violations predating the severance.

### 2. Courts cannot retroactively amend an unconstitutional statute through severance.

Plaintiff may argue, as the plaintiffs did in *Creasy*, *Lindenbaum*, and *Hussain*, that the Supreme Court's severance of the government-debt exception did not affect the constitutionality of the rest of the provision, and allows for enforcement of the restriction against *non*-government-debt-collector callers as though the amendment had simply never existed. *See Creasy*, 489 F. Supp. 3d at 506 ("Indeed, while the plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of the *rule*, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis."); *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *6; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *5. That argument would fail, however, because severance cannot *retroactively* transform an unconstitutional provision into a constitutional one. Supreme Court precedent and common-sense logic bear this out.

19

i.   *Severance of the government debt exception applies only prospectively.*

In *AAPC*, the Supreme Court did not address whether severance of the government-debt exception would apply retroactively.   Nevertheless, Supreme Court precedent dictates that severance does *not* apply retroactively in this context.   Severance cannot make an unconstitutional provision constitutional and enforceable *during the period in which the provision violated the Constitution*.   Instead, severance applies only *prospectively*.

The Supreme Court addressed this issue last year in *Seila Law v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183, 2208-09 (2020).   In *Seila Law*, the Supreme Court concluded that Congress violated constitutional separation of powers principles when it established a single independent Director of the Consumer Financial Protection Bureau ("CFPB").   *Id.* at 2207.   To save the statute at issue, the plurality opted to sever the provision protecting the Director from removal by the President.   *Id.* at 2207-08.   But, in doing so, the plurality recognized that actions taken when the CFPB's leadership structure was unconstitutional were invalid unless the Director subsequently ratified the action after the statute was rendered constitutional.   *Id.* at 2211 (remanding to determine whether the civil investigative demand at issue was validly ratified).   Accordingly, the plurality recognized that severance can make a statute constitutional *prospectively*, but it does not cure a constitutional infirmity *retroactively*.   If the opposite were true, there would have been no need for the CFPB Director to re-affirm actions that occurred at a time when the statute was unconstitutional.

This principle that severance cannot make a statute constitutional retroactively makes good sense.   "An unconstitutional law is void, and is as no law."   *Ex Parte Siebold,* 100 U.S. at 376.   Severance can render a statute constitutional moving forward, but it cannot retroactively revive a

"void" law.  Many courts have reached the same conclusion.  *See, e.g.*, *Arthrex*, 953 F.3d at 767 (O'Malley, J., concurring) ("Our decision that the statute can be *rendered* constitutional by severance does not remedy any past harm—it only avoids continuing harm in the future.  It is only meaningful prospectively, once severance has occurred.").

The district court in *Lindenbaum* also addressed whether the Supreme Court's severance of the government-debt exception retroactively rendered the automated-call restriction constitutional between November 2015 and the July 2020 decision in *AAPC* and held that it *did not*.  According to the *Lindenbaum* court, there was "little, if any, support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the existence of the exception."  *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *12.  In the words of the court, the "insertion of the government-debt exception transformed [a] valid time, place, and manner restriction into an unconstitutional content-based restriction."  *Id.* at *19.  Even though the Supreme Court severed the government-debt exception, it cannot "wave a magic wand and make that constitutional violation disappear" through retroactive application of severance.  *Id.* at *20.

Similarly, the district court in *Hussain* addressed the same issue and concluded that "at the time the robocalls at issue were made, the statute could not be enforced as written and a later amendment to a statute cannot be retroactively applied."  *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *7 (citing *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *7).  "Thus, at the time Defendants engaged in the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction.  Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter jurisdiction over this action."  *Id.* at *8.

### ii. *Applying the automated-call restriction to the proposed class would lead to the same constitutional problems AAPC was designed to avoid.*

Recognizing the exclusively prospective nature of the Supreme Court's severance in *AAPC* also avoids other serious constitutional problems that would arise from retroactive application.

There can be no dispute that the Supreme Court invalidated the government-debt exception in *AAPC*. *AAPC*, 140 S.Ct. at 2343 ("[S]even Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute."). In other words, a government-debt collector cannot be held liable for robocalls made during the relevant period because those calls were permissible under a now-invalidated provision.

If, however, a *non*-government-debt-collector caller could be liable under the provision or its implementing regulation during that same time period, that outcome would lead to the precise unequal treatment that the Supreme Court sought to avoid in *AAPC*. The plurality recognized the automated-call restriction, as written, could not pass constitutional muster if it regulated automated calls based on the content of the communications. *Id.* at 2347. If the Court were to hold Lexington Law liable for calls made to class members prior to July 6, 2020, it would be doing precisely what *AAPC* prohibits: holding parties to different standards of liability based on the content of the calls. Indeed, Justice Gorsuch cautioned against such an approach in his dissent, stating that "a holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up *endorsing the very same kind of content discrimination* we are seeking to eliminate." *Id.* at 2366 (Gorsuch, J., dissenting) (emphasis added); *see also Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at * 18 ("And, to treat [portions of the automated-

call restriction] as void *ab initio* only as to certain parties would likely raise its own set of equal treatment concerns….").

A simple hypothetical proves this point.  If another plaintiff brought suit on the same day as Plaintiff on behalf of a four-year class alleging identical facts except that the defendant's calls were made for the purpose of collecting a government debt instead of offering business services, this Court would have no choice but to dismiss the claims prior to July 6, 2020.  This is because the AAPC's severance remedy operates only prospectively *regarding the liability of government-debt collectors*.  *See* AAPC, 140 S. Ct. at 2355 n.12 ("As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before" the effective date of the severance).

Here, Plaintiff has filed a suit identical to that hypothetical suit in all respects <u>*except*</u> for the content of the speech at issue.  But the content of speech <u>*cannot*</u> be the deciding factor as to whether the speaker is liable or not: that is exactly what the First Amendment forbids, as *AAPC* affirmed.  *AAPC*, 140 S. Ct. at 2346 ("A robocall that says, 'Please pay your government debt' is legal.  A robocall that says, 'Please donate to our political campaign' is illegal.  That is about as content-based as it gets.").

### 3.  <u>The government-debt exception was inextricably intertwined with the automated-call restriction.</u>

Finally, Plaintiff may argue that the automated-call restriction existed before the government debt exception and, therefore, it is capable of being enforced as a standalone provision, even if the government debt exception itself was unconstitutional.  But that argument is contrary

23

to the holding in *AAPC*, which held that when Congress added the government debt exception to the automated-call restriction, it created a provision of the TCPA that was unconstitutional *as a whole*.

The government debt exception was not – and could not – be deemed independently unconstitutional.  There was nothing inherently suspect about a provision, by itself, that permitted certain government-debt related calls.  *See Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *20 ("This is unlike cases in which Congress adds an exception, the entirety of which results solely in unequal treatment, to an otherwise valid statute.").  When the government-debt exception was combined with the existing automated-call restriction, however, it rendered the *entire provision* unconstitutional *for the period of time it contained that exception*.  Indeed, it was the *combination* of the two which created a provision that "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment."  *AAPC*, 140 S. Ct. at 2343; *Creasy*, 2020 U.S. Dist. LEXIS 177798, *10 (concluding "the exception and the rule are inextricably intertwined for the purpose of any reasonable analysis").

In short, "[t]his is not a situation where "one section of a [provision]" being repugnant to the Constitution, does not render the whole [provision] void." *Creasy*, 489 F. Supp. 3d at 507 (citing *Seila Law*, 140 S. Ct. at 2208 (plurality opinion)) (alterations in original).  Instead, "[p]recisely the opposite is true here: 'the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.'" *Id.* (emphasis added).  And this Court has no jurisdiction to enforce an unconstitutional law or its implementing regulation against Lexington Law.  *Id.* (recognizing the court lacked subject matter jurisdiction because the unconstitutional

24

version of the automated-call restriction applied during the time the challenged communications were sent); *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, *20 (same).  Therefore, the proposed class should be narrowed to cover only alleged violations occurring after the Supreme Court rendered its decision in *AAPC* on July 6, 2020.

### CONCLUSION

For the foregoing reasons, Defendant John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law Firm respectfully requests that the Court grant its motion to dismiss Counts III and IV of Plaintiff's Complaint with prejudice, strike Plaintiff's class allegations concerning claims prior to July 6, 2020, narrow the proposed "No Consent" class to begin on July 6, 2020, and award such further relief as the Court deems appropriate.

Dated: April 28, 2021.

DENTONS DURHAM JONES PINEGAR, P.C.


*/s/       James D. Gilson*
James D. Gilson
Lyndon R. Bradshaw
*Attorneys for Defendant*

SLC_5409344.1
115541739

## <u>CERTIFICATION AND CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of April 2021, I electronically filed the foregoing the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to all counsel of record.

<u>/s/ Cathy Frandsen</u>
Cathy Frandsen

26