IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JENNIFER MOORE, individually and on behalf of all others similarly situated, | **CLASS ACTION** |
| *Plaintiff*, | **CASE NO. 2:21-cv-00027-TC** |
| vs. | **JURY TRIAL DEMANDED** |
| JOHN C. HEATH, ATTORNEY AT LAW, PLLC d/b/a LEXINGTON LAW FIRM, | |
| *Defendant*. _____/ | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

Plaintiff Jennifer Moore hereby responds in opposition to Defendant John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law Firm's Motion to Strike Class Allegations ("Mot." or "Motion"), [DE 20], and states:

I.      **INTRODUCTION**

As demonstrated by Plaintiff in her First Amended Class Action Complaint, Defendant is a serial violator of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"). Unable to dispute Plaintiff's claims, Defendant seeks the drastic remedy of striking Plaintiff's pleading based on a flawed constitutional challenge[1] that has been rejected by the majority of courts that have analyzed the issue. Indeed, only two courts have adopted Defendant's "argument that the severability of the government debt exception is not retroactive so the entire statutory restriction was invalid during the time that the amendment was in effect." *LaGuardia v. Designer Brands, Inc.*, No. 2:20-cv-2311, 2021 U.S. Dist. LEXIS 97396, at *5 (S.D. Ohio May 24, 2021) (citing *Lindenbaum v. Realgy, LLC*, 497 F.Supp.3d 290 (N.D. Ohio 2020), *appeal filed*, No. 20-4252 (6th Cir. 2020); *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 508 (E.D. La. 2020)).

> A third court, the Middle District of Florida, initially concluded the same in *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-Oc-30PRL, 2020 U.S. Dist. LEXIS 236577, at *8 (M.D. Fla. 2020), but a few months later, Judge Moody departed from his earlier opinion, noting that "since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC."

*LaGuardia*, 2021 U.S. Dist. LEXIS 97396, at *5 (quoting *Boisvert v. Carnival Corp.*, No. 8:20-CV-2076-30SPF, 2021 U.S. Dist. LEXIS 47397, 2021 WL 1329079, * 2 (M.D. Fla. 2021)).

"On the other hand, the better jurisprudence…is the conclusion reached by all other courts to consider the issue — that the other, constitutional restrictions contained in the TCPA continue to be

---

[1] On May 30, 2021, the undersigned notified counsel for Defendant of their failure to comply with Federal Rule of Civil Procedure 5.1, which requires Defendant to notify the Court of a constitutional challenge so that the Court can certify the challenge and provide notice to the Government.

enforceable for the time period of 2015 to 2020." *LaGuardia*, 2021 U.S. Dist. LEXIS 97396, at *5 (citing *Less v. Quest Diagnostics, Inc.*, No. 3:20 CV 2546, 2021 U.S. Dist. LEXIS 14320, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *Moody v. Synchrony Bank*, No. 5:20-CV-61 (MTT), 2021 U.S. Dist. LEXIS 57853, 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021); *AAbramson v. Fed. Ins. Co.*, Case No. 8:19-cv-02523-TPB-AAS, 2020 U.S. Dist. LEXIS 232937, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 U.S. Dist. LEXIS 202519, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230-PHX-DWL, 2020 U.S. Dist. LEXIS 193358, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020); *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 U.S. Dist. LEXIS 139299, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020)); *see also Massaro v. Beyond Meat, Inc.*, No. 320CV00510AJBMSB, 2021 U.S. Dist. LEXIS 46980, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021); *Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 U.S. Dist. LEXIS 55482, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021)*; Stephen v. Rite Aid Corp.*, No. CV 20-5601-MWF (PDX), 2021 U.S. Dist. LEXIS 68157, 2021 WL 1255423 (C.D. Cal. Feb. 2, 2021)*; McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 16403 (S.D. Cal. Jan. 28, 2021)*; Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 0:20-CV-60638-WPD, 2021 U.S. Dist. LEXIS 30940, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021)*; Rieker v. Nat'l Car Cure, LLC*, No. 3:20CV5901-TKW-HTC, 2021 U.S. Dist. LEXIS 9133, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-CV-02072-MCS-SP, 2020 U.S. Dist. LEXIS 239730, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020)*; Shen v. Tricolor Cal. Auto Grp., LLC*, No. CV 20-7419 PA (AGRX), 2020 U.S. Dist. LEXIS 237582, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020).

Defendant's position – that class members who received Defendant's robocalls prior to July 6, 2020 "have no viable claim[,]" Mot. at 6 – is wrong and should be rejected by this Court. Defendant's interpretation and application of *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2351 (2020) ("*AAPC*") finds no support in the opinion itself, the Supreme Court's severability principles, or common sense. This Court should thus deny Defendant's Motion and allow all individuals who were harmed by Defendant's refusal to comply with the TCPA to pursue their claims.

## II. ARGUMENT AND MEMORANDUM OF LAW

Defendants seek to "ride a discrete constitutional flaw in [the TCPA] to take down the whole, otherwise constitutional statute." *AAPC*, 140 S. Ct. at 2351 (2020). In *AAPC*, the Supreme Court held that the 2015 government-debt exception to the TCPA's autodialer ban was unconstitutional: "Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *AAPC*, 140 S. Ct. at 2343 (plurality opinion). "Applying traditional severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343. Three of these seven Justices—Justices Breyer, Ginsburg, and Kagan—did not believe that the government debt exemption was unconstitutional at all. *Id.* at 2357-63 (2020). But, because "[a] majority of the Court, however, has concluded the contrary. […] I agree with Justice Kavanaugh's conclusion that the provision is severable." *AAPC*, 140 S. Ct. at 2363 (Breyer, J. dissenting in part). It would no doubt be a surprise to these three Justices that their concurrence is being used in an attempt to invalidate a law which they never thought was unconstitutional in the first place.

In regards to the practical effect of the Supreme Court's decision, Justice Kavanaugh, in Part III of his plurality opinion — which dealt with severance — explained that,

3

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. See Reply Brief 24. **On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

*AAPC*, 140 S. Ct. at 2355 n.12 (emphasis added). As discussed in detail below, this holding aligned with how lower courts applied severance of the government-debt exception prior to the *AAPC* decision. *See, e.g., Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2018 U.S. Dist. LEXIS 52509, at *15 (M.D. Fla. Mar. 29, 2018) ("Bright House is not entitled to a judgment on those claims, since — in light of the severability of the Government-Debt Exception — a finding that the anti-robocall provision is unconstitutional would have no effect on Bright House's exposure to liability under the TCPA."). Only two Justices did not believe severance was the appropriate remedy: Justice Gorsuch and Justice Thomas.

### A. *AAPC* did not Hold That the TCPA's Robocall ban was Unconstitutional.

Defendant argues that *AAPC* can only be read as holding that section 227(b)(1)(A)(iii) of the TCPA was unconstitutional between 2015 (when the government-debt exception was passed) and July 6, 2020 (when the Supreme Court issued its opinion in *AAPC*). Defendant relies on two outlier non-binding district court decisions[2] that interpreted *AAPC* in that manner. *See* Mot. at 5 (citing *Creasy v. Charter Communs*., Inc., 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020) and *Lidenbaum v. Realgy, LLC*, No. 1:19 CV 2862 (N.D. Ohio Oct. 29, 2020)). For the reasons discussed below, this Court should interpret *AAPC* as it was written, decline to follow *Lidenbaum* and *Creasy*, and deny the Motion.

---

[2] As noted above, in the third case cited by Defendant (*Sullivan*), Judge Moody subsequently reversed his holding.

4

The first flaw with Defendant's argument and reasoning—a fault shared by the *Creasy* and *Lidenbaum* opinions—is its conclusion that the Supreme Court's decision in *AAPC* held that all of section 227(b)(1)(A)(iii) was unconstitutional. *See* Mot. at 1; *see also Creasy*, 2020 WL 5761117 at *13 ("the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution.") (emphasis in original); *Lidenbaum,* 2020 U.S. Dist. LEXIS 201572, at *2 ("In *AAPC*, the Supreme Court held that 47 U.S.C. § 227(b)(1)(A)(iii) violated the Constitution...").

But the Supreme Court held the exact opposite: "**we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional**." *AAPC*, 140 S. Ct. at 2348-49 (emphasis added); *see also id.* at 2355 ("A generally applicable robocall restriction would be permissible under the First Amendment."). Indeed, the Supreme Court granted certiorari to determine, "[w]hether **the government-debt exception** to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Brief of Petitioners, *Barr v. AAPC*, 140 S. Ct. 812 (No. 19-631), 2020 WL 1062397, at *1 (Feb. 24, 2019) (emphasis supplied).

Defendant's argument is the very argument the *AAPC* plaintiffs presented, and which the Supreme Court rejected in Part III of Justice Kavanaugh's opinion: "Before we apply ordinary severability principles, we must address plaintiffs' broader initial argument for why the entire 1991 robocall restriction is unconstitutional." *Id.*, 140 S. Ct. at 2348. The *AAPC* plaintiffs argued that the addition of the government-debt exemption proved that Congress did not have a genuine concern in consumer's privacy that justified the remainder of the prohibition. *Id.* at 2348. The Supreme Court analyzed this argument and concluded that "we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional." *Id.* at 2349.

5

The Supreme Court then analyzed the *AAPC* plaintiffs' argument that it should not apply severance and instead invalidate the entire provision. *Id.* at 2349. In addressing that argument, the Supreme Court reiterated its severability precedent which holds "that an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id.* at 2353 (plurality opinion) (quoting *Frost* v. *Corporation Comm'n of Okla.*, 278 U. S. 515, 526-527 (1929)) (emphasis supplied). In other words, the Supreme Court held that the government-debt exemption itself was unconstitutional and, consequently, simply a nullity that had no effect on section 227(b)(1)(A)(iii) of the TCPA. *See id.* at 2354 ("the text of the Communications Act's severability clause requires that the Court sever the 2015 government-debt exception from the remainder of the statute."). Consistent with this holding and reasoning, the Supreme Court affirmed the judgment of the Fourth Circuit. *Id.* at 2356. That judgment held that "severance of the debt-collection exemption **will not undermine the automated call ban**." *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 170 (4th Cir. 2019) (emphasis supplied).

Thus, contrary to Defendant's assertions, the Supreme Court did not hold that the TCPA's entire autodialer provision was unconstitutional; it held that the government-debt exemption was unconstitutional. Indeed, in rejecting the very argument Defendant makes, the Supreme Court noted that,

> Put in common parlance, the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act as passed by Congress). Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute.

*AAPC*, 140 S. Ct. at 235.

### B. The Supreme Court's Severability Principles Mandate a Finding of Retroactive Application.

The Supreme Court's severability precedent independently leads to the same result as that announced by Justice Kavanaugh in *AAPC*. In fact, numerous courts' pre-*AAPC* application of severance to the exact issue in *AAPC* prove that this is true. As the Supreme Court has held for over a century:

> Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact.

*Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-329 (2006) (internal citations omitted); *see also id.* at 329 ("[T]he 'normal rule' is that partial, rather than facial, invalidation is the required course, such that a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact." (internal quotations omitted)); *Frost*, 278 U.S. at 526-27 ("Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent."); *Dorchy v. State of Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void in its entirety."); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) ("[O]ne section of a statute may be repugnant to the Constitution without rendering the whole act void.").

The Supreme Court's explanation of the consequences of its severance of the government-debt exception is in line with the well-established principle that severability determinations are interpretations of federal law that must apply retroactively to all pending cases. "When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's]

7

announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). The Supreme Court has "prohibit[ed] the erection of selective temporal barriers to the application of federal law" because "the substantive law" should not "'shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* (alterations in original) (citation omitted).

The *Harper* retroactivity rule is grounded in the idea that courts have no "constitutional authority … to disregard current law or to treat similarly situated litigants differently." *Id.* (citation omitted). Moreover, the Court's severability holding in *AAPC* was not just a matter of statutory construction, it was also a remedy for a constitutional violation. In *Harper*, the Supreme Court stated that "both the common law and our own decisions have recognized a general rule of retrospective effect for the constitutional decisions of this Court." 509 U.S. at 94 (internal quotation marks and brackets omitted).

In *Eberle v. People of State of Michigan*, 232 U.S. 700 (1914) – which was quoted by the Supreme Court in *AAPC* in its discussion of severance[3] – a Michigan "local option law" made it unlawful "to manufacture or sell malt, vinous, spirituous, or intoxicating liquors in any county where a majority of the electors vote in favor of prohibition." *Id*. at 702. Through amendments passed 10 and 13 years, respectively, after the original law, "it was further provided that the act should not be construed to 'prohibit the sale of wine or cider made from home-grown fruit in quantities of not less than 5 gallons, nor . . . to prohibit the manufacture of wine or cider, nor . . . to prohibit the sale at wholesale of wine or cider manufactured in said [dry] county to parties who reside outside of said county.'" *Id*. at 703. The defendants, who had been prosecuted under the law

---

[3] "For example, in *Eberle* v. *Michigan*, the Court held that 'discriminatory wine-and-cider amendments' added in 1899 and 1903 were severable from the underlying 1889 state law generally prohibiting the manufacture of alcohol." *AAPC*, 2353 (quoting 232 U. S. 700, 704-705 (1914)).

for manufacturing beer, argued, *inter alia*, that their prosecution was unconstitutional on equal treatment grounds because of the amendment permitting the sale of wine and cider, *id*. at 703-04, essentially the same reasoning Defendant here advances to argue that it cannot be held liable for its TCPA violations. In rejecting the argument, the Supreme Court held: "On the other hand in the case at bar the original Local Option Law of 1889 had been held to be constitutional as a whole, **and its validity could not be impaired by the subsequent adoption of what were in form amendments but, in legal effect, were mere nullities**." *Id*. at 705. Justice Kavanaugh's holding illustrates this maxim: the violation of a validly enacted statute is not excused by the invalidity of an unrelated and severable amendment. This is particularly true when the invalid provision is an amendment added years after the original law took force, as is the case with the government-debt exemption.

The Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) is also instructive. In *Sebelius*, the Supreme Court held that a provision of the Affordable Care Act that permitted the Secretary of Health and Human Services to "withhold all further [Medicaid] payments … to the state if she determines that the State is out of compliance with any Medicaid requirement" was unconstitutional. *Sebelius*, 567 U.S. at 585 (emphasis and internal quotations removed). The Supreme Court cured this unconstitutional provision by severing it from the statute, rather than striking down the entire Affordable Care Act. *Id.* at 588 ("The remedy for that constitutional violation is to preclude the Federal Government from imposing such a sanction. That remedy does not require striking down other portions of the Affordable Care Act."). In so ruling, the Supreme Court did *not* hold that the Affordable Care Act was unconstitutional prior to severing this provision. In fact, the Supreme Court explicitly stated that "[t]oday's holding does not affect the continued application of § 1396c to the existing Medicaid program." *Id.* at 586.

So too here. In *AAPC*, the Supreme Court invalidated a narrow exception to the automated dialer ban for government debt collectors. *AAPC*, 140 S. Ct. at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law."). The Supreme Court "cure[d] that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute." *Id.*; *see also id.* at 2355 ("The government-debt exception is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems."). As in *Sebelius*, the Supreme Court followed and did not hold that the narrow exception rendered the entire autodialer ban unconstitutional. *Id.* ("In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.").

Thus, when the Supreme Court severs a portion of a law and leaves the rest in place, it only declares the severed portion unconstitutional. It does *not* hold that the remainder of the law was unconstitutional while the severed portion was in place. When the Supreme Court has undone a prior act or conviction, it is because the *entire* law, and not a mere portion, was unconstitutional. Thus, when the Supreme Court struck down the narrow government debt collector exception in *AAPC*, it did not hold that the autodialer ban had been unconstitutional while the exception was in place. To ensure this decision was not interpreted otherwise, the Supreme Court explicitly clarified its "decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12.

Having failed to advance any legitimate basis to strike Plaintiff's First Amended Class Action Complaint, Defendant's Motion should be denied.

10

**WHEREFORE**, Plaintiff Jennifer Moore, respectfully requests an order denying Defendant's Motion to Strike Class Allegations, and for such other relief deemed appropriate by the Court.

Dated: May 30, 2021

Respectfully Submitted,

By:   **HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713